In re SHERMAN HOMES, INC., Debtor.

**Sherman E. FOGG, Barbara J. Fogg and Sheldon B. Fogg, Plaintiffs,**

v.

**SHERMAN HOMES, INC., Defendant.**

Bankruptcy No. 181–00155.

Adv. No. 181–0138.

United States Bankruptcy Court,
D. Maine.

Feb. 28, 1983.

James Robinson, Bangor, Me., for plaintiffs.

Roderick Rovzar, Portland, Me., trustee.

Gregory Tselikis, Portland, Me., for trustee.

Richard E. Poulos, Portland, Me., for Devonshire.

Louis Kornreich, Bangor, Me., for defendant.

## MEMORANDUM DECISION

FREDERICK A. JOHNSON, Bankruptcy Judge.

The trustee of this estate seeks approval of an application to compromise this adversary proceeding. Devonshire Capital Corporation, a creditor of Sherman Homes has objected to the application. The court concludes that the application should be approved.

On May 15, 1981, Sherman Homes filed a petition under chapter 11. In December of 1981, the Foggs filed a complaint for relief from stay under 11 U.S.C.A. § 362(d) (1979). They allege that they hold claims against Sherman Homes, which are secured by mortgages on the land and buildings of Sherman Homes. These mortgages arose out of a transaction in which the Foggs conveyed their stock in Sherman Homes to McColgan Corporation in return for cash and mortgage notes from McColgan Corporation. The obligation was guaranteed by Sherman Homes. The guarantees are secured by the mortgages from Sherman Homes. The Foggs seek relief from the section 362(a) automatic stay in order to foreclose on the Sherman Homes mortgages.

In his answer and counterclaim, the trustee claims that Sherman Homes received no consideration for the mortgages and guarantees and, therefore, that these documents are void. Secondly, he claims that the conveyances were without consideration and rendered Sherman Homes insolvent. He asks the court to set aside the conveyances as fraudulent under 11 U.S.C.A. § 548 (1979). Finally, he requests the court to subordinate the Foggs' claims under 11 U.S.C.A. § 510(c) (1979).

On March 17, 1982, the case was converted from chapter 11 to chapter 7. In May, the trustee filed an application to compromise due to the complexity, delay, and cost of pursuing the adversary proceeding. The terms of the proposed compromise provide that the Foggs will give the trustee a $100,-000 note, secured by a mortgage, in return for a conveyance to them of the debtor's land and buildings. In addition, the Foggs will waive all claims against the estate and will assign certain claims to the trustee.

Devonshire, the holder of a second mortgage on the debtor's land and buildings, objects to the proposed compromise. Essentially, it asserts that the transaction in which the Foggs conveyed their stock in Sherman Homes to McColgan Corporation was in reality a repurchase of the shares by Sherman Homes. Devonshire alleges that Sherman Homes was insolvent at the time that it made payments to the Foggs for their stock. The insolvency cutoff rule, which Devonshire believes is codified in Me. Rev.Stat.Ann. tit. 13–A, § 518(2), (5) (1981), prohibits a corporation from repurchasing its own stock if the corporation is insolvent at the time of payment. Applying this rule, Devonshire contends that the corporate obligations to the Foggs are void. Therefore, it alleges that the court has no discretion to approve the pending application.

Although there may be some substance to Devonshire's argument that the insolvency cutoff rule is applicable to the conveyance from the Foggs to McColgan Corporation, this argument ignores the issue before the court. The court is considering an application to compromise the dispute between the Foggs and the trustee, which involves this very issue. Thus, the court is deciding whether a compromise of the issue is appropriate. The court concludes, after reviewing the law on compromise and the facts of this proceeding, that a compromise is appropriate.

Rule 919(a) of the Rules of Bankruptcy Procedure provides: "On application by the trustee ... and after hearing on notice to the creditors ... and to such other persons as the court may designate, the court may approve a compromise or settlement." As pointed out in *Providers Benefit Life Insurance Co. v. Tidewater Group, Inc. (In re Tidewater Group, Inc.),* "[t]he determination of whether to approve an application to compromise is a matter within the sound discretion of the bankruptcy judge." 13 B.R. 764, 765 (Bkrtcy.N.D.Ga.1981) (citations omitted). Rule 919(a) gives the court broad authority to approve compromises. *Official Creditors' Committee v. Beverly Almont Co. (In re General Store of Beverly Hills),* 11 B.R. 539, 542 (Bkrtcy.App. 9th Cir.1981); *In re Trans East Air, Inc.,* 9 C.B.C. 469, 472 (Bkrtcy.D.Me.1976) ("broad discretion").

In deciding whether to approve a compromise, most bankruptcy courts consider the four criteria set forth by the Court of Appeals for the Eighth Circuit in *Drexel v. Loomis,* 35 F.2d 800 (8th Cir.1929). *See, e.g., Tidewater Group, Inc.,* 13 B.R. at 765; *In re W.T. Grant Co.,* 4 B.R. 53, 69 (Bkrtcy. S.D.N.Y.1980). The four *Drexel* factors are:

(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Drexel,* 35 F.2d at 806.[1] Finally, the court must consider the principle that "the law favors compromise." *Port O'Call Investment Co. v. Blair (In re Blair),* 538 F.2d 849, 851 (9th Cir.1976); *see also In re Trans East Air, Inc.,* 9 C.B.C. at 472 ("settlements are to be encouraged").

The length of this proceeding on the issue of the appropriateness of a compromise is convincing evidence of the uncertainty of the estate's success in litigation on the mer-

---

1. The court will not consider the second factor because no evidence was presented on this issue.

its, of the complexity of the issues, and of the expense, inconvenience, and delay that will attend a proceeding on the merits. *Cf. Blair,* 538 F.2d at 851 (court considers expense and delay caused by appeal of compromise approval as evidence that approval warranted). The parties have filed a total of eight briefs, numbering 108 pages in all, and generated 342 pages of transcript over three days of hearings just to show the court how uncertain (or certain) the outcome of the litigation is.

■ The court's preliminary research on the issues reveals that they are indeed complex. The case law does not convince the court that there is a "sound legal basis for the litigation and a likelihood of substantial ultimate benefit to the estate." *In re General Store of Beverly Hills,* 11 B.R. at 541. A compromise should be approved unless this standard is met.

■ Finally, although the court has considered Devonshire's objection to the proposed compromise, a creditor's objection is not controlling and will not prevent approval. *In re General Store of Beverly Hills,* 11 B.R. at 541. The court concludes that the compromise is in the best interest of creditors of the estate.

An appropriate order will be entered.