COFFIN, Chief Judge.
 

 This appeal is the third we have decided to date arising from these yet-uncompleted bankruptcy proceedings. Each has been instituted by these appellants, the majority shareholders in the bankrupt Continental Investment Corporation. The appeal presents a single, simple issue: whether the district court abused its discretion in approving a compromise settlement of an adversary proceeding brought by the bankrupt’s trustee. We find that it did not, and we affirm.
 

 Before considering this issue, we pause briefly to address the question of our jurisdiction over this appeal. Since the order appealed from is interlocutory, we would ordinarily lack jurisdiction to review it. Appellants cite as their only basis for invoking our jurisdiction the terms of the compromise, which purportedly provide that “the compromise cannot be implemented until the entry of an appellate order from which no further appeal is permissible.” We think this argument is seriously misguided in at least two respects: first, because the compromise provides only that
 
 if
 
 any appeal is taken the compromise is not effective until it is completed, and second and more fundamentally because in no event can parties confer appellate jurisdiction by agreement. We note
 
 sua sponte
 
 that two exceptions to the final judgment rule are potentially applicable here: the special appellate jurisdiction over proceedings in bankruptcy conferred by section 24(a) of the Bankruptcy Act of 1898, 11 U.S.C. § 47(a) (repealed 1978, but applicable to this litigation), and the jurisdiction over certain collateral orders under 12 U.S.C. § 1291 established in
 
 Cohen v. Beneficial Industrial Loan Corp.,
 
 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).
 
 See In re Continental Investment Corp.,
 
 637 F.2d 1 (1st Cir. 1980). The appellants have not raised either jurisdictional basis, and we consider neither to be self-evidently applicable.
 
 See id.
 
 Nonetheless, because we find this appeal to be so clearly lacking in merit, we proceed to consider the issue presented without definitely ruling on the question of our jurisdiction.
 

 Despite the relative simplicity of the issue before us, both the facts giving rise to the adversary proceeding and the procedures involved in the approval of the settle
 
 *10
 
 ment are somewhat complex. Because appellants allege that the district court abused its discretion both substantively, by approving a settlement not in the best interest of the estate, and procedurally, by approving the settlement on the basis of an inadequate record, we must review both sets of facts in some detail.
 

 The early history of CIC’s reorganization proceedings is given in our first opinion in this litigation,
 
 In re Continental Investment Corp.,
 
 586 F.2d 241 (1st Cir. 1978),
 
 aff’d,
 
 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979). The adversary proceeding, brought by the trustee against Dort A. Cameron III (“Cameron”), Drexel Burnham Lambert, Inc. (“DBL”) and certain DBL employees and members of their families (“appellees”), centered on the following facts. Cameron was at all relevant times a California-based Vice President of Institutional Fixed Income Sales for DBL, a securities broker-dealer based in New York City. In December, 1979, he became a member of the De-bentureholders’ Protective Committee (“the Committee”) representing the interests of the bankrupt’s debentureholders in the reorganization proceedings. In his capacity as a Committee member, Cameron, in January and February, 1974, received several letters containing alleged material inside information concerning the bankrupt. At the same time, he negotiated a sale of the entire holdings of CIC’s two largest deben-tureholders (“the Systems”) to DBL, for which he received a sales commission of approximately $1600. DBL in turn within a day or two sold about 40 percent of those debentures to other employees in the Los Angeles office, yielding it a profit of approximately $25,000. It is the sale by Cameron and the purchase by DBL under these conditions that constitutes the primary object of the adversary proceeding.
 

 The conduct of that proceeding itself forms the second target of appellants’ challenge. In March, 1979, the Committee filed an Application for Approval of Purchases and Sales of Debentures, which was opposed by the trustee, the appellants, and the SEC. After a hearing, at which the Committee filed three supporting affidavits, the district court on April 13 enjoined the defendants .from disposing of any debentures acquired from the Systems, and directed the trustee and the appellants to conduct discovery within 60 days on their claim that the purchases violated fiduciary duties owned CIC’s debentureholders.
 

 Discovery commenced on May 1. Appellants, the SEC and the trustee took daylong depositions of both Cameron and Edwin Kantor, a Senior Executive Vice President of DBL, totalling over 500 pages, and viewed numerous documents; other documents requested were said to be non-existent or were objected to. The trustee formally instituted the adversary proceeding on June 13 with the filing of a request for a limitation of appellees’ claims on the debentures pursuant to section 212 of the Bankruptcy Act, 11 U.S.C. § 612 (repealed 1978), and for a preliminary injunction against their selling any debentures pending a decision on the merits. A hearing was held on the motion for a preliminary injunction, at which thirteen additional affidavits were filed. The motion was denied on July 19 on the ground that the trustee had failed to show irreparable harm and a likelihood of success on the merits, and the injunction of April 13 was dissolved. Indicating that he intended to pursue the merits of the complaint, the trustee in August and September filed a second request for production of documents from DBL, to which DBL objected, and several additional notices of depositions. As a result of settlement negotiations, the trustees on January 21, 1980 filed an application for authority to compromise the controversy for $130,000 (“the application”), to which appellants objected. Argument on the application was held on February 20, and the district court approved the compromise on March 10, noting that the additional discovery sought by appellants was “not likely to contribute anything further” that was apt to improve the adversary proceeding’s “demonstrably uncertain chance of success.”
 

 We agree with the district court. We think it clear procedurally that the record before the district court was an adequate
 
 *11
 
 one on which to assess the compromise application, and equally clear substantively that on that record the court did not abuse its discretion in approving the application. We need refer to only a few specific aspects of the proceedings in the district court to confirm each of these conclusions.
 

 First, what appellants themselves describe as “the
 
 only
 
 factual issue ... to be determined in the adversary proceeding” (their emphasis) was whether Cameron’s status on the committee was that of DBL’s agent. In considering this question, the district court had before it both the Cameron and the Kantor depositions, each of which described Cameron as one of many general salesmen for DBL, whose title of Vice President was an honorific one and who had no discretionary authority even with respect to DBL’s purchase decisions. As to whether Cameron represented DBL on the committee, the depositions related that Cameron was new to and unfamiliar with such committees, and that he became involved in it — and represented his involvement to others as being — wholly in his personal capacity as a holder of a significant amount of debentures. Finally, the depositions, together with an affidavit provided by a DBL in-house counsel, specifically stated that DBL instructed Cameron, upon his notifying them of his position on the Committee, that he was to represent only himself and not DBL, and that DBL would never employ a saleman so to represent it. On the basis of this evidence, the district court found in its order of July 19, 1979 that “Cameron played no role as a committee member and the facts do not support any allegation that he provided DBL with information that influenced their decision.” In its order of March 10, 1980, the district court addressed the question at length:
 

 “If the Trustee were to prevail in this controversy, he must prove that Dort Cameron was an agent of Drexel Burn-ham Lambert Incorporated (DBL), while serving on the debentureholders’ committee. We have reviewed again the extensive record, including affidavits, depositions, and memoranda of counsel and conclude that there is no basis for such a finding under either of the two theories advanced by the opposition on the present record. We are satisfied that the intensive, though short-lived, investigation conducted by the Trustee in this matter is a sufficient basis upon which to rest that conclusion and we need not repeat our earlier findings and conclusions.”
 

 We think the evidence before the court, coupled with the failure of discovery to suggest anything to be contrary, provided an ample basis for reaching a decision on this question and sufficient support for the decision rendered.
 

 We note only one further ground for not disturbing the district court’s decision: the multi-faceted nature of its discretion on the matters presented. First, the merits of the underlying adversary proceeding whose compromise the court approved were specifically addressed to its discretion: the section 212 relief sought by the trustee provided that the district court “may” limit claims for specified reasons. Second, the nature and extent of appropriate discovery is in any event committed to the district court’s discretion. Finally, the decision whether to approve a proposed compromise of a claim under section 27 of the Bankruptcy Act, 11 U.S.C. § 50 (repealed 1978) turns on the court’s assessment of “the best interest of the estate”. In making that assessment, the court is to consider the probability of success of the litigation, the difficulties of discovery, the complexity, expense, and delay incurred by the litigation, and the paramount interest of the creditors.
 
 See TMT Trailer Ferry v. Anderson,
 
 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968);
 
 Drexel v. Loomis,
 
 35 F.2d 800, 806 (8th Cir. 1929).
 

 Again, the district court addressed the relevant considerations directly and extensively:
 

 “The alleged principal participants have provided affidavits or have been deposed. The depositions were conducted at length, and with great care, and, the Court notes, with great zeal and intensity by counsel for the majority stockholders. Further depositions, no matter how skillful or in
 
 *12
 
 tense, are unlikely to produce information any more probative than is now available from these principal sources. Nor is it likely that further depositions of some purchasers would force a retraction or retreat from these positions .... The Court is satisfied that the Trustee has carefully considered this claim and has made an independent evaluation of its prospects. That evaluation is based upon a sufficient investigation and discovery of the essential, relevant and critical eviden-tiary witnesses. The interest of the majority stockholders is understandable, but there is no other opposition to this compromise. The Trustee ought not to be forced to engage in protracted litigation at the expense of the estate when there appears to be a demonstrably uncertain chance of success.
 

 With this analysis and conclusion before us, we are not prepared to say that the court has failed in this case adequately to consider the appropriate factors. Indeed, in light of the fact that this is the third unsuccessful and relatively nonmeritorious appeal brought by these appellants from yet uncompleted bankruptcy proceedings, and the fact that appellants are the only party to object to the compromise, we are particularly disinclined to find that the court abused its discretion in denying them further discovery or the opportunity to engage in further litigation. Accordingly, the order approving the proposed compromise is affirmed.
 

 So ordered.