**In re CVC, INC., dba Cleveland Vibrator Co., dba Admiral–Record Hydrotech, Debtor.**

**Bankruptcy No. B89–1752.**

United States Bankruptcy Court, N.D. Ohio, E.D.

Oct. 24, 1990.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

### I.

The matter before the Court is the motion of Ciuni & Panichi, Inc. (Ciuni) for application of interim compensation for services rendered by them as accountants for the Debtor, CVC, Inc. (CVC), pursuant to 11 U.S.C. § 328.

### II.

Ciuni began working for CVC, pursuant to an appointment granted by this Court on July 24, 1989 and is presently continuing this employment. On January 16, 1990 Ciuni was hired by William Gardner (Gardner), a party interested in purchasing CVC's assets, to perform accounting services for him. At the time of this hiring, Gardner was in negotiations with CVC to purchase all of its assets and retained Ciuni to perform services relating to his purchase of CVC. The negotiations ultimately led to Mr. Gardner purchasing the assets of CVC. This purchase was approved by the Court, and an order was entered May 7, 1990.

Ciuni filed an initial interim application for allowance of interim fees and expenses on February 27, 1990. This application was for the period from July 24, 1989 through October 31, 1989 for fees totaling $6,591.10 and expenses totaling $118.54. On August 1, 1990 Ciuni filed a second interim application for allowance of interim fees and expenses for the period from November 1, 1989, through June 30, 1990, seeking fees totaling $16,995.40 and expenses totaling $211.68.

The Official Creditors' Committee (Committee) filed an objection to the second interim application. Specifically, the Committee objected to a total of $13,626.30 in fees that Ciuni billed the estate in its second interim application, asserting that the services billed were of no benefit to the estate and were only beneficial to the new owner, Gardner. Those services included, *inter alia*, "tax research on the limitations on net operating loss carryforwards and unused business credit carryforwards as a result of ownership changes, analysis of accounts receivable receipts, time spent on price testing on inventory material and labor costs, and finally, time billed the estate for Bradford S. Eldridge (Eldridge), a Ciuni associate." The Committee contended that Gardner stated that Eldridge was his accountant at the subject sale negotiation meetings and further asserted that Eldridge supported Gardner's statements at the negotiating meetings as he explained his role in working with lending institutions from which Gardner sought financing. Notwithstanding those contentions, the Committee informed the Court at the fee application hearing that it was withdrawing its objection in exchange for Ciuni reducing the second interim application for allowance of compensation in the amount of $6,230.00.

### III.

The principle dispositive issue is whether an application for compensation and expenses sought by a professional for services performed should be awarded where the professional was simultaneously working for a third party whose interest was adverse to that of the debtor's estate.

## IV.

Professional persons may be hired by the trustee of an estate to represent the interest of the estate during bankruptcy proceedings in accordance with 11 U.S.C. § 327(a) which states:

a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the state, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

"Disinterested person" is defined in 11 U.S.C. § 101(13). In pertinent part:

E) A person that does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity holders, by reason of any direct or indirect relationship to, connection with or interest in the debtor or an investment banker ... or for any other reason. 11 U.S.C. § 101(13)(E).

Should a professional person become an interested person at any time while in the employ of the estate, the Court, pursuant to 11 U.S.C. § 328(c), may deny allowance of compensation for services and reimbursement of expenses to that person.[1]

Appropriately, the U.S. Supreme Court's decision in *Woods v. City National Bank & Trust*, 312 U.S. 262, 269; 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941), held:

The incidence of a particular conflict of interest can seldom be measured with any degree of certainty. The bankruptcy court need not speculate as to whether the result of the conflict was to delay action where speed was essential, to close the record of past transactions where publicity and investigation were needed, to compromise claims by inattention where vigilant assertion was necessary, or otherwise to dilute the undivided loyalty owed to those whom the claimant

purported to represent. Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation.

*See also, In re Georgetown of Kettering, Ltd.*, 750 F.2d 536 (6th Cir.1984): "Because an actual conflict of interest existed.... application for compensation should have been denied." *Id.*, at 540 *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1256 (5th Cir.1986).

Ciuni began working for the Debtor's estate as a professional on July 24, 1989. Once it began providing services to Gardner that were directly related to Gardner's purchase of the assets of CVC, Inc., its disinterestedness was lacking. The dual employment began on January 16, 1990 when Ciuni first performed services for Gardner. Ciuni was well aware that Gardner was negotiating to purchase the assets of CVC, Inc. It is well established that "those who seek appointment as professional persons in bankruptcy cases owe the duty of complete disclosure of all facts bearing upon their eligibility for such appointment." *In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557, 579 (Bankr.D.Utah 1985). Ciuni's dual representation in this matter, without Court authorization, was made in derogation of this duty.

■ Had the Creditors Committee not objected to Ciuni's second fee application, it is questionable whether this matter would have ever been brought to the attention of this Court. The Committee's withdrawal of its objection does not diminish the gravamen of this situation. Nor does it preclude this Court from determining the reasonableness of the fees requested. A Bankruptcy Court is not compelled to award fees to professionals simply because no objections were filed. *Matter of Mansfield Tire and Rubber Co.*, 65 B.R. 446 (Bankr. N.D.Ohio 1986). Further, it is the duty of the Court to examine all aspects of applications for professional fees, in addition to reasonableness. *In the Matter of The Lib-*

---

1. 11 U.S.C. § 328(c). Limitation on Compensation of professional persons.
   "... [T]he court may deny allowance of compensation—at any time during such profession-

al's employment under section 327 or 1103—if— such person is not a disinterested person or represents or holds an interest adverse to the interest of the estate ..."

*eral Market, Inc.,* 24 B.R. 653 (Bankr.S.D. Ohio 1982); *In re Watson Seafood and Poultry Co., Inc.,* 40 B.R. 436 (Bankr.E.D. N.C.1984).

## V.

■ The conflict of interest in dealings of this nature are obvious. While the objective of CVC would be to maximize profits for the Debtor's estate in a sale, Gardner, on the other hand, would attempt to purchase CVC at a price most advantageous to himself. While functioning as the accountant for both parties, Ciuni would experience great difficulty in serving the best interest of either party. Especially in this adverse role apparent where Ciuni was intimately involved in dealing with financial institutions in an attempt to obtain financing for Gardner's purchase of CVC. In brief, Ciuni's professional services, in part, were adverse to and were not beneficial to the Debtor's estate. An actual conflict of interest existed with respect to the dual employment held by Ciuni.

■ Accordingly, no compensation will be awarded to Ciuni for professional services charged to the Debtor's estate for any period beginning with January 16, 1990, due to its conflict of interest. Further, Ciuni, by reason of its failure to disclose its conflict of interest, is hereby discharged as the Debtor's accountant and the prior Order of this Court retaining Ciuni for this purpose is hereby vacated.

Accordingly, Ciuni's second application for an allowance of interim compensation is hereby awarded an amount of $3,583.80 for professional services rendered. This amount reflects an award for services rendered prior to the period of the actual conflict of interest. Additionally, $118.54 is hereby awarded for expense reimbursement during the subject application period. Both amounts are hereby approved for a total distribution of $3,702.34.

IT IS SO ORDERED.